## WILLIAM VALENTINE vs. JEFFERSON BORDEN & others.

A fund was bequeathed in trust for the benefit of the testator's grandson during his life, and, on his death leaving children, to vest in them and " be divided amongst them in the same manner as if the same had been devised to said grandson in fee simple and he had died intestate seised and possessed thereof." After the grandson's death leaving children, one of them died while under full age, his mother and the other children surviving, and the fund remaining undivided in the hands of the trustees. Held, that the deceased child's share in the fund passed to his administrator, to be distributed equally among his mother and the other children under the statute of distributions.

A fund was bequeathed in trust to pay one sixteenth of the income to the testator's grandson, and one sixteenth to the testator's granddaughter, during the life of each of them respectively; with a provision, as to each, that upon his or her death, leaving heirs of his or her body, one half of the fund should vest in such heirs absolutely, and a direction that " separate accounts be kept with each of my said grandchildren and their descendants," and a further provision that "if either of my said grandchildren shall die leaving heirs of his or her body, any of whom shall be under the age of twenty-one years, this trust shall continue in force, and the share or proportion of this trust falling to such heirs shall be managed by said trustees until such heirs shall be twenty-one years old, or the last survivor of them shall die, whichever shall first happen, and no longer. And said trustees shall in the meantime from year to year pay to such heirs or their guardians respectively so much of the net income of their said share or shares of the said trust fund as they shall think proper and necessary to his, her or their good education and comfortable support." Held, that, on the death of the grandson, leaving issue, the fund should be divided into halves; one to be kept and managed by the trustees for the benefit of the surviving granddaughter to the annual amount of one eighth of its income, and the rest of its income to be invested with the principal for the ultimate benefit of her issue, if they should become entitled to it; the other to be divided into as many parts as there were children of the grandson, vesting in them in severalty, but, until they respectively

should come of age or die, to be kept and managed by the trustees, and each such part subject, during the minority of the child in whom it vested, to disbursements of its income at the discretion of the trustees for his or her education and support; and that any such child of the grandson was entitled, upon coming of full age, to take his or her respective part, free thenceforth from the trust.

BILL IN EQUITY, filed July 6, 1868, by William Valentine, a son of William and Martha A. Valentine, grandson of James Valentine, and great-grandson of William Valentine, setting forth that his said great-grandfather died in July 1839, leaving a will which was duly proved and allowed in the probate court for Bristol, and a copy of which was annexed to the bill, the material parts thereof for the purposes of this case being as follows :

After providing, in the first three articles, for the payment of his debts and certain legacies, the testator, in the fourth article, gave the residue of his estate to trustees, in trust to pay to his grandson, William Valentine, son of James Valentine, so much of the net yearly income thereof as they should deem proper for his good education and comfortable support, not exceeding in any one year one sixteenth of the net income for that year; to do the same in respect to said William's sister, Julia Valentine ; and to apply the trust fund further according to other provisions of the will, among which were the following :

The third clause of the fourth article of the will contained the following provision concerning said William : " In case my said grandson shall die leaving heirs of his body, my will and direction is, that one half of the said residue of my said estates, property and effects, and of the rents, dividends, interests and profits thereof remaining, shall go to and vest in such heirs, and their heirs and assigns forever, to be divided amongst them in the same manner as if the same had been devised to my said grandson in fee simple and he had died intestate seised and possessed thereof; and I do bequeath and devise the same accordingly."

The fifth clause of the same article made similar provision in like words concerning said Julia.

The fifth article of the will was substantially as follows : " If my said grandchildren shall both die leaving no heirs of the body

of either of them, my will and direction is, that the whole of said residue, with the rents, dividends, interests and profits thereof remaining, shall go to and vest in the children and descendants of my sister Abigail Webster, to them and their respective heirs and assigns forever; and I do bequeath and devise the same accordingly. Provided, however, and my wil' and direction is, that if either of my said grandchildren shall die leaving heirs of his or her body, any of whom shall be under the age of twenty-one years, this trust shall continue in force, and the share or proportion of this trust falling to such heirs shall be managed by said trustees as aforesaid until such heirs shall be twenty-one years old, or the last survivor of them shall die, whichever shall first happen, and no longer. And said trustees shall in the mean time from year to year pay to such heirs, or their guardians, respectively, so much of the net income of their said share or shares of the said trust fund as they shall think proper and necessary to his, her, or their good education and comfortable support."

The seventh article provided " that separate accounts of all moneys received and paid out on account of said trust fund, and of all stocks, moneys at loan, and other property, effects and debts belonging thereto, be kept in books provided for that purpose, the custody whereof shall belong to the trustees for the time being; that separate accounts be kept with each of my said grandchildren and their descendants, if any they shall have, of all moneys or property paid or conveyed as aforesaid; and that the balance of each shall be transferred from year to year, and equitably adjusted if there be more than one of my descendants alive at the termination of this trust."

The eighth article provided : " If my grandson and granddaughter aforesaid shall both die leaving no heirs of the body of either of them, so that the limitation and bequest of the residue of my said property and effects to the descendants of the said Abigail Webster shall take effect, my trustees shall keep and manage the said residue, and the profits, income and increase thereof remaining, so long as it shall be necessary to the execution of their trust and to make distribution according to my true intent and meaning, and no longer."

The bill further set forth that at the death of the testator his grandchildren William and Julia were both living: that said William died on May 20, 1857, leaving a widow, Martha A. Valentine, (since become by remarriage Martha A. Remington,) and five children, all minors, including the plaintiff; that one of these children, Charles E. Valentine, died before the filing of this bill, and while under full age; that the plaintiff became of full age on June 5, 1868; that the three remaining children were still minors; and that said Julia was still living, had been twice married, the second time to James A. Fox, and had issue of both marriages, who were living, those of the first marriage being of full age.

The prayer of the bill was "that it may be determined by the judgment of the court whether or not the plaintiff, on arriving at twenty-one years of age, was thereupon entitled to have set off and paid over to him his just proportion of said residuary trust fund, and further determine what the plaintiff's interest in said fund is, and to what share or proportion of the same he is entitled, and whether or not, upon the decease of Charles E. Valentine, his interest in and share of said fund descended to the surviving brothers and sister merely, or passed to them and their mother in equal shares; and that the said trustees may be ordered and decreed to render an account of the fund, and to set off and pay over to the plaintiff such a proportion thereof as he is entitled to by law and under the will of his great-grandfather;" and for general relief. The trustees, with Mr. and Mrs. Remington and the surviving brothers and sister of the plaintiff, and Mr. and Mrs. Fox and all the children of Mrs. Fox, were made parties defendant.

The answer of the trustees disclosed a sum of nearly a million and a half of dollars to the credit of the trust fund; and alleged "that they are advised that it may not be required, by the true meaning of the will, that they should pay or set over to the plaintiff a proportion or share of said trust fund until the youngest of his father's children shall have become of the full age of twenty-one years, or until some future time or event and that, if not so required by law now to pay or set over a por-

tion thereof to the plaintiff, they, considering the inexperience of the plaintiff and the spirit of the directions of the testator in the will, might not so pay and set over to the plaintiff his share at present, except the net income thereof or so much of the net income thereof as they shall think proper and necessary to the comfortable support of the plaintiff."

The answer of Mrs. Remington alleged that she was " now entitled to receive from said trustees, as one of the heirs and representatives of her son, Charles E. Valentine, deceased, one fiftieth part of the trust fund in the hands of the trustees ; and this whether or not the plaintiff is now entitled to his proportionate share of said fund."

The answers of Mrs. Fox and her children alleged " that by the true construction and meaning of the will the plaintiff is not entitled to have his proportion or share of said trust fund, or any proportion thereof, set or paid over to him until all the aforesaid minor children of his father, William Valentine, shall become of the full age of twenty-one years, or until all of said minor children who shall not have attained to said age of twenty-one years shall die, whichever may first happen ; and that upon the happening of either of the said events the residuary trust, created or provided for by said will, will then and thereupon terminate and cease, and one half part of the aforesaid residuary trust fund will then come and be payable to the defendant Julia V. Fox, and the proportions of the other half · thereof, belonging severally to the plaintiff and to the other descendants of said William Valentine, will then go and be payable to them respectively."

Issue was joined on the answers, and the case reserved by *Colt,* J., on the bill and answers, for the determination of the full court.

*B. F. Thomas & R. Olney,* for the plaintiff.

*E. Ames,* for the trustees.

*W. W. Crapo,* for Mrs. Remington.

*J. C. Blaisdell,* for the plaintiff's surviving brothers and sister

*P. H. Sears,* for Mrs. Fox, and the children of her first marriage.

*G. H. Pierce*, for Mrs. Fox's minor children, issue of her second marriage.

HOAR, J. The able and exhaustive arguments which have been addressed to us in this case have fully satisfied the court with a conclusion which we might perhaps have found no great difficulty in reaching.

1. It is clear that the provisions in the eighth article of the will of William Valentine have reference only to the bequests to the descendants of his sister Abigail Webster; and, as the contingency on which the bequest of the residue to those descendants depended did not happen, the questions presented in this suit are not affected by that article.

2. By the third clause of the fourth article of the will, on the death of the testator's grandson one half of the whole fund in the hands of the trustees vested in the children of the said grandson, of whom the plaintiff is one. It follows, that on the death of Charles E. Valentine, one of the children of said grandson, his share would go to his administrator, to be distributed equally among his mother and surviving brothers and sisters under the statute of distributions, the deceased having taken under the will of his great-grandfather, and not by inheritance from his father. *Sedgwick* v. *Minot*, 6 Allen, 171. *Howland* v. *Howland*, 11 Gray, 469. The plaintiff has therefore no direct claim against the trustees for any part of the estate of said Charles E. Valentine, which can be asserted or enforced in this suit.

3. It seems to us necessarily to follow from the vesting of one half of the estate, upon the death of the grandson, in his issue, taken in connection with the direction in the seventh article that "separate accounts be kept with each of my said grandchildren and their descendants," that, on the death of the plaintiff's father, the fund should be divided into two parts; one part to be kept and managed by the trustees for the benefit of Mrs. Fox, so far as the will allows, that is, to an annual amount not exceeding one eighth of the income of that half, and the rest of such income to be invested with the principal for the ultimate benefit of her issue, if they should become entitled to it; and

that the other half should be divided into five parts, one for each of the children of said grandson, vesting in them in severalty, but to be retained and managed by the trustees till they should become of age or die, and subject under the will to different disbursements of income, according to the discretion of the trustees, for their support during their minority.

4. We are of opinion that the true construction of the last two clauses of the fifth article of the will is that for which the plaintiff contends. The language is somewhat obscure, and might well bear either construction; but the one which we think should prevail is equally with the other consistent with a literal interpretation, and is supported by the general purpose of the testator to be gathered from the whole will.

In the first place, it is to be noticed that there has been a complete and absolute bequest to the issue of the grandson, to vest in them absolutely and completely at his death, in the same manner as if they had inherited from him an intestate estate. The purpose that they should have and enjoy the property from that time is thus clearly indicated. The clauses in question come in as a proviso, and, as it would seem, an afterthought, following the disposition made of the property in the event of both the grandchildren dying without issue. As they restrict the gift previously made, the restriction should not be extended beyond the clear and necessary import of the terms employed; because, if these are doubtful, they ought not to derogate from that which was in itself distinct, full and complete.

The proviso is as follows: " Provided, however, and my will and direction is, that if either of my said grandchildren shall die leaving heirs of his or her body, any of whom shall be under the age of twenty-one years, this trust shall continue in force, and the share or proportion of this trust falling to such heirs shall be managed by said trustees as aforesaid until such heirs shall be twenty-one years old, or the last survivor of them shall die, whichever shall first happen, and no longer. And said trustees shall in the meantime from year to year pay to such heirs or their guardians respectively so much of the net income of their said share or shares of the said trust fund as they shall

think proper and necessary to his, her or their good education and comfortable support."

The phrase " such heirs," where it first occurs, may without violence to the language be applied to those who are under the age of twenty-one, — " shall die leaving heirs " " any of whom shall be under the age of twenty-one years," — the share falling to " such heirs," that is, to those last described, who were under the age of twenty-one. And this seems the more sensible when the phrase " such heirs " is next repeated, — " until such heirs shall be twenty-one years old," — an event not yet to happen in the case of those who were twenty-one years old already, but only to those who were not yet twenty-one, and thus showing that the latter only were intended by " such heirs." The trust might continue in force as well after a part of the estate had been distributed as before.

But, looking at the reason of the thing, and endeavoring to find the intent of the testator in a sensible and intelligent purpose to which the provisions of his will are adapted, we are brought irresistibly to the same conclusion. We have already seen that from the death of the grandson the shares of his issue would vest in them in severalty. If there were more than one to take under the will, the share of one from that time would not affect the share of another. The testator had made no attempt to provide for any limitation to his descendants beyond those who should be living at the decease of his grandchildren respectively. He was providing for those who were yet unborn. If his grandchildren should have issue to take under the will, the number, whether one or more, the age, the sex, were all uncertain. While there is some reason apparent for his wish that the full enjoyment of his bequest should be suspended, in the case of those who were minors, till they should attain their majority, and that, until they were capable of managing property for themselves, it should remain in the charge of trustees of his own appointment, we can think of no just ground for a provision that the enjoyment by an adult of his own separate vested share of the estate should be made to depend upon the contingency of his having or not a brother or sister, or nephew

or niece, who was a minor. Yet, upon any other view than the one we have taken, while, if the grandson left but one son, he would take the whole share at twenty-one, he would be left dependent upon the judgment of the trustees for a mere support, although he might be forty years old and have a family of his own, if there were a brother or nephew who had not attained his majority; and this, although his share and the other had no connection in law or fact except that they were in the hands of the same trustees.

The direction to the trustees to pay to " such heirs " or their guardians respectively so much of the income of their share or shares of the trust fund as they should think proper for their education and support, can have its full application and effect by construing " such heirs " to mean those who were minors.

A decree will therefore be entered that the trustees convey to the plaintiff one fifth of one half of the estate in their hands, and for the allowance to all parties to the suit of their costs from the fund.